UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Access For All, Inc. and Nelson M. Stern, Individually,                06cv8150 (GEL)

       Plaintiff,

vs.

IMICO 86 Developer, LLC., Bovis Lend Lease LMB, Inc.,
NYC Department of Transportation, EXTELL Development
Company, and Metropolitan Transportation Authority,

       Defendants.
_____/

## **COMPLAINT**
(Temporary and Permanent Injunctive Relief Demanded)

Plaintiffs Access For All, Inc, ("Access") a New York State corporation dedicated to fighting discrimination against o\people with disabilities, and Nelson M. Stern ("Mr. Stern"), Individually, on their behalf and on behalf of all other individuals similarly situated, (referred to herein as "Plaintiff"), hereby sues the defendants, IMICO 86 Developer, LLC., Bovis Lend Lease LMB, Inc. ("Owner"), NYC Department of Transportation ("DOT"), EXTELL Development Company, and Metropolitan Transportation Authority ("MTA"), for Injunctive Relief, and litigation expenses, and costs pursuant to *inter alia* the Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131-3 et seq. ("ADA"), Title III of the ADA, 42 U.S.C. § 12181, et seq., and the Rehabilitation Act of 1973, 29 U.S..C. § 793-4 ("Rehab Act") and Pendent State Law claims.,

## **JURISDICTION AND VENUE**

1.     Pursuant to 28 U.S.C.§ 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title II of the ADA.

1

2.      Venue lies in the judicial district of the property situs, in this case, the Defendant has property and is doing business within this judicial district.

**STATUTORY BACKGROUND**

3.      On July 26, 1990, Congress enacted the Americans with Disabilities Act of 1990, establishing important civil rights for individuals with disabilities, including the right to full and equal enjoyment of goods, services, facilities, privileges, and access to places of   public accommodation and public transportation. .

4.      Among other things, Congress made findings in 42 .S.C. §12101 (a)(1)-(3), (5) and (9) that included:

a.      Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

b.      historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

c.      discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting and access to public services;

d.      individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs,

2

activities, benefits, jobs or other opportunities; and

e.     the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductively.

5.     Congress also explicitly stated in 42 U.S.C. §12101 (b)(1)(2) and (4)  that the purpose of the Americans with Disabilities Act was to:

a.     Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

b.     provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and,

c.     invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

6.     Furthermore, pursuant to 42 U.S.C. § 12182 and 28 CFR 36.201(a) and Sections 4.3 of the ADAAG and Section 10 of the ADAAG Transportation Facilities, Congressional intent was for no place of public accommodation or transportation to discriminate against an individual, on the basis of such individual's disability, with regard to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at that place of public accommodation.

7.     Congress provided commercial businesses at least 18 months from enactment make their facilities compliant to the regulations in the Americans with Disabilities Act.  The effective

3

date of Title II of the ADA was January 26,1992, or January 26,1993, if the Defendant has ten(10) or fewer employees and gross receipts of $500,000 or less. 42 U.S.C. § 12181; 28 CFR 36.508(a).

## THE PARTIES AND STANDING

8.          Plaintiff, Access, is a New York corporation.  The purpose of this corporation is to represent the interest of its members by assuring places of public accommodation and transportation are accessible to and usable by the disabled and that the disabled are not discriminated against because of their disabilities. Access and Mr. Stern have suffered and will continue to suffer direct and indirect injury as a result of the Defendant's discrimination until the Defendant is compelled to comply with the requirements of the ADA and Rehab Act.

9.          Plaintiff,   NELSON M. STERN is  sui juris and qualifies as an individual with disabilities as defined by the ADA.  In August  2006, Mr. Stern attempted to enter the subway from 86th Street and Lexington Avenue and was denied access.   This denial of access forms the basis of this lawsuit.  He plans to return to the property to avail himself of the transportation offered to the public. The Plaintiff encountered architectural barriers at the subject property including the lack of any elevator.  He has multiple sclerosis, which renders him unable to ambulate without the use of a scooter.  Mr. Stern, a New York attorney, and an advocate for the disabled, has undertaken the project of authoring a book on public accommodations and transportation in the Tri-State metropolitan area and their accessibility or lack there of  to the disabled.  He had daily need for use of the subway that he is denied because of the lack of an elevator.

10.          The barriers to access at the property  have effectively denied or diminished the plaintiff's ability to use the subway system and have endangered his safety.  Barriers to access at this property have posed a  risk of injury to the plaintiff. Other barriers to access as described in this

4

complaint cause  similar  risk of injury, embarrassment or discomfort to the plaintiff .

11.      Plaintiffs have a realistic, credible, existing and continuing threat of discrimination from the defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations  in paragraph 16 of this complaint.

12.      Defendant, each of them, owns, leases, is working on, is responsible for, or has jurisdiction over the access to the subway stop at 86th Street and Lexington Avenue, a  place of public transportation as defined by the ADA and the regulations implementing the ADA.  Defendant is responsible for complying with the obligations of the ADA. The place of access to  public transportation that the Defendant owns, operates, leases, controls or is responsible for is known as the 86th Street subway station at Lexington Avenue, New York, NY.

13.      Plaintiffs have reasonable grounds to believe that they will continue to be subjected to discrimination in violation of the ADA by the Defendant.

14.      Mr. Stern desires to visit  the defendant's property not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated  will have full and equal enjoyment of the property without fear of discrimination.

15.      The defendant has discriminated against the individual plaintiffs and members of the disabled community by denying them access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or transportation, as prohibited by the ADA and :the Rehab Act.

## THE INSTANT CLAIM

16.      The Defendant has discriminated and  is continuing to discriminate  against the Plaintiff in violation of the ADA and the Rehab Act  by failing to, *inter alia,* provide for an elevator

for access to the subway at Lexington Avenue and East 86th Street ("East 86th Street Subway Stop")

by January 26,1992.  A preliminary inspection of the subject property have shown that violations

exist in a number of areas, as described hereafter:

a.      There is no elevator at the East 86th Street Subway Stop to gain access to the subway
        station.

b.      There is currently construction at the East 86th Street Subway Stop but no plans to install
        a handicapped accessible elevator to the subway.

c.      There is currently construction at East 86th Street Subway Stop and an elevator can be
        installed on the northbound subway with out posing an undue burden on defendants, but
        there are no plans to install an elevator.

d.      Defendants are aware of the need for an elevator at the East 86th Street Subway Stop but
        refuse to install an elevator.

e.      Notwithstanding the need for an elevator at the East 86th Street Subway Stop, defendants
        refuse to install one on the northbound side because one of the southbound side cannot be
        installed at this time.

f.      This construction of a new building at the site of the East 86th Street Subway Stop was
        not known when the MTA and the DOT initiated their global plan for the installation of
        elevators at key stations around New York City and this new fact constitutes a sufficient
        change of facts to warrant a modification of the global plan.

g.      The argument regarding the inability to install a Southbound elevator at the East 86th
        Street Subway Stop is inconsistent with the fact that the 125th Street Subway stop affords
        an opportunity for disabled commuters to transfer from  Northbound to Southbound
        subway.  Therefore there is in effect a southbound elevator one subway stop away.

h.      Without an elevator at the East 86th Street Subway Stop, a disabled person must travel
        over 30 city blocks southbound or northbound to the next closest elevator.

i.      Nondisabled person are allowed access to the subway at the East 86th Street Subway
        Stop.

j.      Owner of the new building is installing an entrance to the subway for non-disabled
        persons and under Title III of the ADA is obligated to install an accessible entrance for
        disabled person if this is readily achievable.

k.      Pursuant to Section 242 (e)(2)(A)(iii)  and Subsection (B) of the ADA that governs Key
        Station Designation and Alterations to Existing Stations, the entrance to the subway

station at the East 86th Street Subway Stop, is required to be accessible for the disabled to the maximum extent feasible even under the more lenient standard of whether this is readily achievable.

17.       The discriminatory violations described in paragraph 16 are not an exclusive list of the

defendant's ADA violations. Plaintiffs require the inspection of the defendant's place of

public transportation to determine all of the discriminatory acts violating the ADA.

18.  Defendant is constructing a new structure, they are required to comply with the ADA and

provide for access for the disabled to ensure to the maximum extent feasible, that the altered portions

of the facility are readily accessible to and useable by individuals with disabilities, including

individuals who use wheelchairs, 28 CFR § 36.402; and finally since the defendant's facility is one

which was designed and constructed for first occupancy subsequent to January 26,1993 as defined

in 28 CFR § 36.401 then the Defendant's facility must be readily accessible to and useable by

individuals with disabilities as defined by the ADA.

19.  Defendant has discriminated against the individual and corporate Plaintiffs by denying

them access to   full and equal enjoyment of the goods, services, facilities, privileges,

advantages  and/or accommodations of transportation in violation of the laws of the United

States  of America.  Furthermore, the Defendant continues to discriminate against the Plaintiff,

and all those similarly  situated by failing to make reasonable modifications to allow for access

to the subway at 86th  Street to afford all offered goods, services, facilities, privileges,

advantages or accommodations to individuals with disabilities; and by failing to     take such

efforts that may be necessary to ensure that no individual with a disability is    excluded, denied

services, segregated or otherwise treated differently than other individuals     because of the

absence of auxiliary aids and services.

20.  The individual plaintiff, and members of the public similarly situated, have been denied access to, and have been denied the benefits of services,     programs and activities of, including transportation through defendant's buildings and its facilities, and have otherwise      been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above. The individual Plaintiff, the members of the public similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.  In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's property to determine all of the areas of non-compliance with the ADA.       Plaintiffs have retained the undersigned counsel and are entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to the ADA and Rehab Act.

## PRE-COMMENCEMENT NOTICE GIVEN TO DEFENDANTS

21.  Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992,  Nevertheless, notice was provided through Assembly Member Jonathan L. Bing. See attached Exhibit "1"  All other conditions precedent have been met by Plaintiff or waived by the Defendant.   Defendant is aware of the need for accommodation of the disabled as it is installing elevator in other locations.

22.  Plaintiffs are without adequate remedy at law and are suffering irreparable harm.

23.  Pursuant to the ADA, this Court is provided authority to grant Plaintiffs Injunctive Relief including an order to alter the Defendant's facility to make those facilities readily accessible and useable to the Plaintiffs and all other persons with disabilities as  defined by the ADA; or by closing the facility either temporarily or permanently  until such  time as  the defendant cures its violations of the ADA.

## PENDENT STATE LAW CLAIMS

24.   The above is incorporated herein.

25.   The laws of the State of New York have also been violated including N.Y. Exec. Law Section 290 *et seq.* and Civ. Rights Law Section 40 *et seq.*.

26.   The law of the City of New York have also been violated including N.Y.C. Adm. Code Section 8-107 *et seq.*,

27.   Plaintiff has been damaged therefrom.

**WHEREFORE,** Plaintiffs respectfully request:

a.      The Court issue a  Declaratory Judgment that determines that the Defendant at the commencement of the subject lawsuit is in violation of Title II of the Americans with Disabilities Act, the Rehab Act, the cited New York State laws and the New York City laws.;

b.      A temporary injunction and a  permanent injunction providing for injunctive relief against the Defendant including an order to install an elevator for access at the East 86th Street Subway Stop and to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals  with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities;

c.      An award of attorney's fees, costs and litigation expense;

d.      Damages pursuant to Title II of the ADA.

e..      Such other relief as the Court deems just and proper.

Respectfully Submitted,

**LAW OFFICES OF NELSON STERN**
Counsel for Plaintiffs
964-Third Avenue, Fifth Floor
New York, N.Y.  10155
(212) 223-8330
(212) 371-2131

By:  **Nelson M . Stern**

_____
          Nelson Stern, Esq.
          Attorney Number NMS8646

Date:  October 3, 2006

This document was created with Win2PDF available at http://www.daneprairie.com.
The unregistered version of Win2PDF is for evaluation or non-commercial use only.